## LOCK, BRUMMETTE & LOCK *v.* JOSEPH M. JAYNE et al.

1. EVIDENCE: UNRECORDED DEED NOT ADMISSIBLE IN, WITHOUT DUE PROOF OF ITS EXECUTION.—Art. 228, Rev. Code, p. 516—which provides that " copies of the record of any bond or other writing, required or permitted by the laws of this State, or of any other State or Territory of the United States, to be recorded, &c., shall, when certified by the clerk in whose office the record is made under his seal of office, be received in evidence in all courts of this State, without accounting for the absence of the original ; but if the execution of such deed, bond, or other writing shall be disputed by the opposite party on oath, the original shall be produced, or its absence accounted for, before such copy shall be read; and such original, when acknowledged or approved according to the laws of the State or Territory where executed, so as to be entitled to be recorded there, shall be evidence in this State without further proof of its execution "—does not authorize the introduction in evidence of an unrecorded original deed, though

. acknowledged or proven, and entitled to be recorded, according to the law of the State where it is executed.

2. SAME : PLEAS *non est factum :* FAILURE TO PROVE SIGNATURE OF GRANTOR, EFFECT OF.—Where the execution of a deed is denied by pleas of *non est factum*, and the proof offered in support of the deed uncertain and doubtful, the failure of the grantee to introduce any proof as to the. genuineness of signature of the alleged grantor, when it is presumable such proof could be obtained, is a circumstance against him.

APPEAL from the Chancery Court of Rankin county.    Hon. John Watts, chancellor.

David Williams died in Rankin county, in this State, in April, 1854.    Joseph M. Jayne was appointed his administrator *c. t. a.*    Reuben Williams, who resided in the State of Texas, was an heir at law and devisee under the will of David Williams, and as such entitled to one-fifteenth part of his estate. Reuben Williams died in the latter part of October, A. D. 1854, leaving a widow and several children.    Appellants filed this bill against Jayne, as administrator of David Williams, and against the widow and heirs of Reuben Williams, seeking to recover the distributive share of said Reuben in the estate of said David Williams, and which said share was still in the hands of Jayne as administrator.

The appellant claimed this share in virtue of an assignment and power of attorney which they alleged were executed by said Reuben on the 16th day of October, 1854.

The heirs of Reuben Williams, in their answer, deny under oath that these instruments were ever executed by Reuben Williams, and charge, if they are mistaken in this, that they were obtained by fraud, Reuben Williams being much addicted to intoxication and a very weak-minded man, and incapable of making such a trade ; and they also insisted that the consideration paid for the assignment, as stated in the bill, ($1200,) was grossly inadequate, the share of Reuben Williams being now worth near $5000.

The original deed of assignment and power of attorney were made exhibits to the bill, and are dated 16th October, 1854. On that day they were acknowledged by Williams before R. E.

Matthews, clerk of the County Court of Hopkins county, Texas, as appears by his certificates, written on the instruments, and given under the seal of the court. There appears also on each a certificate of L. G. Harmon, chief justice of said court, given under the seal of the court, to the effect that the signature of Matthews to his certificate is genuine, that he was clerk at the date of the same, and that it was in due form of law, and that full faith and credit are due his official acts; also another certificate of Matthews, under the seal of the court, that Harmon was presiding judge of the court, and that his signature is genuine, &c. It appears, also, from the indorsement of the clerk of the Probate Court of Rankin county on each of these documents, that they were recorded in his office on the 11th December, 1854.

In further proof of the execution of these papers the complainants read the depositions of said Matthews. In his first deposition he stated "that he once saw Reuben Williams, but had no personal acquaintance with him ; that he never knew deceased only as above stated, and he died about October 15, 1854; that he has no recollection of said Reuben Williams ever appearing before him for the purpose of acknowledging a deed assigning his interest in David Williams' estate to complainant, and has no recollection of any such transaction." This deposition was taken in February, 1857.

In August, 1860, his deposition was again taken. The original deed and power of attorney being submitted to his inspection, he stated that he did not recollect any thing about the deed and power of attorney ; that the certificates to them were signed by him in his own hand ; "the signature of Reuben Williams to the same is genuine, so far as my certificates to the same would show that he acknowledged the same before me. They were acknowledged before me, and my signature is genuine;" that he does not remember who brought the instruments to him on the day they were acknowledged; that his signatures thereto are written as he usually writes his name. "I have a faint recollection of Reuben Williams. The signature of Williams I have no doubt is genuine, from my signature and the seal of my office. The time has been so great I cannot recollect all the circumstances.

distinctly. I suppose, from my certificate, that Williams was in his right mind. From my certificates and from my recollection I am of opinion that Williams was not dead at the time, but I do not know positively. The certificates were made in accordance with the law of Texas, and in the discharge of my ordinary duties. I know of no imposition on Williams, and no subsequent circumstance or fact has induced me to believe that I was imposed on. I have no doubt of the genuineness of my certificates."

It was proven by another witness, Worthington, that he, witness, knew Williams for about nine years previous to his death; that Williams died at witness' house in Lamar county, Texas, between the middle and last of October, 1854, precise date not recollected; that Williams came to his house about four days previous to his death, and he was then sober and in his right mind; this was a few days after the trade, and Williams then told witness he had conveyed all his interest in David Williams' estate to complainants for $150 in cash, four hundred and thirty-eight acres of good land, and their note for $600; that he was satisfied with the trade; that the estate of David Williams would be a long time in litigation, and that he preferred to take what he had got to contending for his share.

Several witnesses proved that Reuben Williams was in the habit of getting intoxicated, and that he was "weak-minded;" and several stated that he was not a "smart" man, yet they had been unable to get the advantage of him in trade; that he was in the habit of attending to his own business.

The deposition of L. G. Harmon, the chief justice of the County Court of Hopkins county, and whose name appeared to the certificates of the official character of the clerk Matthews, stated "that he knew Williams; that he had no recollection of seeing the deed and power of attorney before his deposition was taken; that he does not know whether the signature of Williams thereto is genuine or not; that his own signature to the certificates is not genuine; that he believes Matthews' signature and the seal of the court to be genuine; that by the law of Texas these instruments, under authentication of Matthews, would be admissible to record anywhere in the State."

Lock, Brummette & Lock *v.* Joseph M. Jayne et al.

In the deed of conveyance from Reuben Williams to complainants the *situs* of the property conveyed is not mentioned, otherwise than what may be inferred from the domicile of David Williams, which is stated to be in Rankin county, in this State, at the time of his death. The deed conveys all the interest and right of the grantor in the estate, real, personal, and mixed, of his uncle, David Williams.

Upon final hearing, the chancellor dismissed the bill, and complainants appealed.

*W. C. Harper* and *W. B. Shelby*, for appellants,

Filed an elaborate written argument, in which they reviewed the evidence, insisting that it was amply sufficient to establish the due execution of the deed and power of attorney. They relied on Art. 228, p. 516, of the Rev. Code, as a complete statutory authority for the position that the acknowledgment of the deed before Matthews in Texas was sufficient proof of its due execution to entitle it to be read in evidence in this State, and they insisted that both the language and spirit of that Article justified and required that construction.

*W. P. Harris*, for appellees,

Made the following points:

1. That Art. 228, p. 516, of the Rev. Code, referred alone to *recorded* deeds, whether copies or the original were to be introduced in evidence. That that Article was a great innovation on the rules of the common law allowing an ex parte certificate of an officer, in place of his testimony, which would be subject to cross-examination, and should therefore be construed to embrace nothing not clearly within the letter and spirit of the statute. He went into a critical examination of the language, and contended that a proper grammatical construction of it included only deeds which had been duly recorded. He insisted that the recording of a deed gave it a solemnity and value which was material in estimating it as evidence; that the placing of a deed on record was not only notice to all the world that its due and fair and legal execution was claimed, but it was in fact a challenge to all parties interested to contest it. That in case

VOL. X.—11

fraudulent and forged deeds were placed on record the parties interested would be likely at once to contest them by instituting proceedings to annul them, and for this reason such deeds would not be likely to be placed on record; and hence the failure to record a deed which by law ought or might be recorded, was at least an omission on the part of the grantor to challenge investigation, and for that reason its value as evidence was much impaired.   That the Article under consideration unquestionably meant that copies only of recorded deeds were admissible in evidence upon the mere proof of their authentication, and in the last clause, which speaks of originals, the language employed clearly referred them to the class before spoken of, viz., recorded deeds.

2. That the statute under consideration, even if it meant that original deeds proven for record and admissible to record according to the laws of a sister State should be admissible in evidence in this State, without having been recorded in such State, must be construed to refer exclusively to deeds conveying property situate in such State and subject to the laws of that State.   That it was never contemplated by the Legislature to adopt the laws and rules of evidence of any State in which a grantor may happen to be, in determining upon the validity and due execution of conveyances of property locally situated here.

Mr. Harris also insisted that the proof showed mental weakness and gross inadequacy of consideration, and for this cause the bill ought to be dismissed.   Courts of equity under such circumstances refuse to help the complainants; Story's Eq. sec. 235, 236; and he noticed the fact that no attempt was made to prove the handwriting of Williams as extraordinary and inconsistent with the idea that the instruments were genuine.

*C. E. Hooker*, on same side,
Cited Story's Eq. Pl. sec. 849, 849ª, and 875ª.

*J. F. Foule*, on same side,
Cited Adams' Eq. 408; Lubes' Eq. Pl. 30, and note; Story's Eq. Pl. sec. 72 to 78 and 153 to 159.

HANDY, J., delivered the opinion of the court:

This bill was filed by the appellants, claiming title in virtue of a deed of assignment purporting to be executed by Reuben Williams, one of the heirs and distributees of David Williams, deceased, conveying to the appellants all his interest in the estate, real and personal, of David Williams, and in virtue of a power of attorney purporting to be made to them by said distributee; and seeking to recover the interest so conveyed to the appellants, from the representatives of the estate in this State, the deed of assignment and power of attorney purporting to have been executed in the State of Texas, where Reuben Williams had his domicile, and died.

The defendants in their answer denied the execution of the instruments by Reuben Williams, under oath; and, as evidence of their due execution, the appellants rely, in the first place, upon the fact that they were duly acknowledged before a competent officer in the State of Texas, as appears by the certificates of such officer attached to or written upon them, which certificates are proved to be genuine. These certificates of acknowledgment would have entitled the instruments to record according to the laws of Texas, but the instruments were not placed upon record there. And the first question which arises is, whether the original instruments so acknowledged, but not recorded, are admissible in evidence when their execution is denied in pleading under oath, without further proof of their execution.

The affirmative of this proposition is insisted on, in behalf of the appellants, on the authority of Art. 228, Rev. Code, 516, which provides that "copies of the record of any deed, bond, or other writing, required or permitted to be recorded by the laws of this State, or of any other State or Territory of the United States, &c., shall, when certified by the clerk in whose office the record is kept, under his seal of office, be received in evidence in all courts of this State, without accounting for the absence of the original; but if the execution of such deed, bond, or other writing shall be disputed by the opposite party on oath, the original shall be produced, or its absence accounted for, before such copy shall be read. And such original, when acknowledged or proved, according to the laws of the State or Territory where

executed, so as to be entitled to be recorded there, shall be evidence in this State without further proof of its execution."

It is insisted that, by the latter clause of this statute, an original deed acknowledged or proved according to the laws of the State where executed, so as *to be entitled* to be recorded there, shall be evidence here without further proof of its execution, whether recorded there or not.   But we do not think that a careful examination of the statute will justify this construction.

The first clause of it applies to copies *of the record* of deeds, &c., *recorded* according to the laws of the State where executed, and makes them evidence generally, dispensing with the production of the originals.   The second clause applies to cases where the originals of *such* deeds shall be produced, to wit, where the execution is denied on oath; and in such case requiring that the original shall be produced.   It then provides in what case *such* originals shall be evidence, where the execution is denied on oath, without further proof of execution, to wit, when *such* originals are acknowledged or proved according to the laws of the State where executed, so as to be entitled to be recorded there. Throughout the second clause reference is made to the first clause, which speaks of recorded deeds alone.   On the denial of the execution of *such* deed—that is, the recorded deed previously mentioned—it requires that the original shall be produced— that is, the original of *such* deed, such recorded deed; and it provides that *such* original—that is, the original recorded deed previously spoken of—when acknowledged or proved, &c., so as to be entitled to be recorded when executed, shall be evidence. It does not allow every original deed which is acknowledged or proved *and recorded,* to be read in evidence, without further proof of execution; for it may be acknowledged or proved according to the laws of the State, and yet not be such instrument as is entitled or authorized to be recorded by the laws of the State.   But it must be an original of a recorded deed, which is acknowledged or proved according to the laws of the State, *so as to be entitled to be recorded there.*

The object of statutes authorizing a deed to be acknowledged or proved is, not to establish the instrument as the deed of the party for all purposes, but to entitle it to be recorded.   If that

object is carried out by having it recorded, the deed is thereby so solemnized as to make the record original evidence without further proof of its execution, upon an issue of *non est factum*. But if not recorded, it is not clothed with that solemnity, the purpose of the acknowledgment not having been consummated; and it stands, as a matter *in pais*, and must be proved according to the general rules of evidence.

Thus viewing the question, we think that the certificates of acknowledgment upon the instruments in question were not sufficient evidence of their execution upon the issue made by the pleadings in this case.

The next question is, whether the execution of these instruments is sufficiently proved by other evidence shown in the record.

There are no subscribing witnesses to them, and there is no proof of the signature of Reuben Williams, and no sufficient proof of the fact of his signing and delivering the instruments. The testimony of the officer who purports to have taken the acknowledgments is not positive as to the fact of execution, showing that he has no recollection of the fact of execution and acknowledgment, and that he infers that the execution was duly acknowledged by the grantor from the mere fact that this witness's signature to the acknowledgments is genuine. These certificates do not state that he knew Reuben Williams, the grantor, and although the matter of acknowledgment was of recent occurrence, he had no recollection of the facts attending it. He does not even state that he knew Williams, but only that he saw him once, and that was about the 15th October, 1854, the time when the certificates bear date. It appears to be strange that no proof was adduced of the signature of Reuben Williams, a matter which must be presumed to be readily capable of proof, if the signature was genuine. The only testimony tending to show that the deed was executed by Williams is that of Worthington; but that is not direct to the point of execution, but tends to show acts of recognition from which execution might be inferred. This witness does not speak of the deed and power of attorney, and does not attempt to show that Williams spoke of them and acknowledged his execution of them.

This evidence appears clearly to be insufficient to prove the execution of the instruments upon an issue of *non est factum.* And in addition to this, there is evidence strongly tending to create the suspicion of fraud in obtaining the instruments.

Upon the whole case, we think that the decree is correct, and it is affirmed.

A reargument was asked for, but refused.